**IN THE COURT OF APPEALS OF IOWA**

No. 15-1722
Filed March 23, 2016

**IN THE INTEREST OF Z.S.,**
**Minor Child,**

**R.S., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A father appeals the juvenile court's termination of his parental rights to his child, Z.S. **AFFIRMED.**

Yvonne C. Naanep, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Shane C. Michael of Michael Law Firm, West Des Moines, for minor child.

Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

A father appeals the juvenile court's termination of his parental rights to his child, Z.S.[1] He argues termination was not in the best interests of his son and the juvenile court should have found that statutory factors precluded termination. He contends a guardianship is a better alternative to terminating his parental rights. We find termination was in the child's best interests, and that statutory factors did not preclude termination. We therefore affirm.

## I. Background Facts and Proceedings

Z.S. is a ten-year-old boy, born in 2005. In January 2013, when Z.S. was seven years old, the Iowa Department of Human Services (DHS) received a report that the father had physically assaulted the mother in the family's home while Z.S. and his half-brother were asleep. The father tested positive for methamphetamine use and the DHS child protective assessment was founded against both the father and mother for failure to provide proper supervision. Z.S. was subsequently adjudicated to be a child in need of assistance, and DHS provided various services to assist the family. Initially, Z.S. was allowed to remain in the care of the mother because the father agreed to move out, but then the mother relapsed into drug use of her own—marijuana and methamphetamine—and Z.S. was removed from her care and placed with his maternal grandmother.

Drug abuse has long been a problem in the father's life. He has used marijuana since he was twelve years old and methamphetamine since he was twenty. He has been to treatment seven times for his drug abuse problems,

---

[1] The mother's parental rights to Z.S. were also terminated, but she has not appealed.

including three inpatient programs. He admitted using drugs in the family's home and continued to use drugs during the period of time of the juvenile court proceedings. The father also has a history of anger and domestic violence issues. He admitted Z.S. has witnessed him argue with the mother and also saw him beat up someone who threatened to hit the mother. Despite these serious issues, the father failed to participate in the recommended services provided to him by DHS.

The father was arrested and held in jail in January 2015, and he has not had any visitation with his son since. The father was charged with possession of a firearm by a felon, unauthorized possession of an offensive weapon, and possession of a schedule II controlled substance (methamphetamine) as a second or subsequent offense. He ultimately pled guilty and was sentenced on June 23, 2015, to a fifteen-year suspended sentence and five years of probation. He was placed in the Bridges of Iowa residential treatment program. The January 2015 arrest marked the second time he had been in jail since Z.S.'s birth.

A three-part contested termination hearing was held on May 26, July 2, and July 17, 2015. Both the father and the mother testified, and the father asked for the juvenile court to establish a guardianship with Z.S.'s maternal grandmother as an alternative to termination. On September 28, 2015, the juvenile court terminated the father's parental rights to Z.S. under Iowa Code section 232.116(1)(d), (e), and (f) (2015). The juvenile court explained its reasoning on the two issues raised by the father—whether statutory factors

weighing against termination should apply and whether termination is in the best interests of Z.S.:

> Having found grounds for termination, the Court turns its attention to the issue of whether termination is in the best interest of the child. . . . Unfortunately, the safety concerns that led to removal continue to exist today. The parents' lack of meaningful progress and participation in services show an inability or unwillingness to make necessary changes to have the child placed in their care. This child cannot be returned to either parent at this time due to their unresolved substance abuse and domestic violence issues, the exact issues that brought this child to the Court's attention in February of 2013.
>
> The issue before the Court is essentially how to best achieve permanency for this child, through a guardianship with grandmother or adoption by grandmother. The Court acknowledges that Iowa Code section 232.116(3)(a) provides the Court need not terminate the parental rights when a relative has legal custody of the child, such as in this case. However, Iowa Code section 232.116(3)(a) is not mandatory, and the Court has discretion regarding whether termination of the parent-child relationship is in the child's best interest. . . .
>
> In determining whether termination is in the child's best interest given his bond with the parents and placement with grandmother, the Court relies heavily on the testimony of the child's therapist. [She] indicated the child is emotionally susceptible to harm arising from instability in knowing where he is going to be living. . . . When questioned regarding the possibility of guardianship, [the child's therapist] reiterated her continued concerns regarding the unknown for the child placement. A guardianship will allow for the child's continued hope his parents will overcome their substance abuse issues, which has historically increased his anxiety and depression. [The therapist] noted that it would be essentially emotionally harmful to leave the child in a legal mechanism such as a guardianship whereby the legal parents could continue to challenge placement or continue to communicate future changes in placement. She testified that such challenges or discussions of future changes in placement will have the same effect as the turmoil of the uncertainty the child has faced throughout the past two-and-a-half years. The effect has been reports of thoughts of self-harm, violent behaviors, inability to socialize with peers, increased anxiety, increased depression, and decrease in self-worth. . . . He does not deserve to wait for his parents to potentially reunite with him at some undetermined future date, if at all. This case has been addressed by other courts which found that young children like Z.S. cannot endure and wait for

mature and responsible parenting. Therefore, the Court finds there are no legal exceptions in Iowa Code section 232.116(3) which would argue against termination. Considering all the evidence, including the parent's lack of progress, child's mental health concerns, father's lack of contact, the child's age, the likelihood parents would seek to disrupt a guardianship, and the child's need for true permanency, the Court finds termination is in the child's best interest.

(Internal citations omitted).

The father now appeals.

## II. Standard of Review

We conduct a de novo review of proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.* We give weight to the factual determinations of the juvenile court, particularly regarding the credibility of witnesses, although we are not bound by them. *Id.* The primary consideration of our review is the best interests of the child. *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012).

## III. Discussion

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *Id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if

proceeding with termination is in the best interests of the child. *Id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory factors set forth in section 232.116(3) should serve to preclude termination. *Id.*

The father does not suggest the State failed to prove grounds for termination; instead, he challenges the juvenile court's ruling as it relates to the second and third steps of the termination analysis. First, he argues termination was not in the best interests of his son. In support of this argument, the father points to his completion of anger management and substance abuse courses while in jail, and also to testimony of his son's therapist that Z.S. was angry about being out of his parents' care and "in a perfect world" wanted to be home with them. Second, the father suggests the juvenile court should have applied two statutory factors which weigh against termination. *See* Iowa Code § 232.116(3)(a) ("A relative has legal custody of the child."); *id.* § 232.116(3)(c) ("There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."). As he did below, the father argues the juvenile court should have established a guardianship with Z.S.'s maternal grandmother as an alternative to terminating his parental rights.

On our de novo review, we agree with the juvenile court's well-reasoned conclusions that termination was in the best interests of Z.S. and that no statutory factors served to preclude termination. We do not wish to belittle whatever recent self-improvement the father has made in jail, but that improvement is too little, too late. We find the father's position with respect to the

testimony of Z.S.'s therapist—that the child wanted to live with the parents "in a perfect world"—to be without merit. The father has left out an important portion of that testimony, which shows Z.S. understands quite well the reality that his father may never make the changes necessary to provide him safe and stable care:

> I've talked to [Z.S.] about where he feels comfortable and if he feels comfortable going back with his parents and those kind of things. And [Z.S.] has said that he feels comfortable with his grandma and feels safe there even though she doesn't let him get away with everything. And [Z.S.] says that in a perfect world, he would like to go home, but he does not feel that his parents would stay or remain sober. And that he would worry about that.

Finally, as the juvenile court correctly stated, the language of 232.116(3) is permissive, so a juvenile court *may* choose to forego termination if any of the listed circumstances are satisfied but is not obligated to do so. *See In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). As always, the best interests of the child remain our primary consideration. Thus, we agree that even though Z.S. was placed with his maternal grandmother and had a close bond with the father, termination is still appropriate because it is in Z.S.'s best interests. His long-term physical, mental, and emotional needs will be best served by terminating the father's parental rights in order to allow for the permanency and stability that will come from adoption by the maternal grandmother.

**AFFIRMED.**